Good morning. Myles Pope for Mr. Valencia-Mendoza, and I'd like to reserve two minutes for rebuttal. When it enhanced Mr. Valencia-Mendoza's base offense level, the district court erred in using the statutory maximum for possession of cocaine instead of the maximum range that Mr. Valencia-Mendoza actually faced. In territory resendo, the Supreme Court unambiguously held that an offense's maximum term of imprisonment is the maximum that the actual record of conviction should be verified in that case. A recidivist finding can set the maximum term of imprisonment only when the finding is part of the record of conviction. But whereas here, Mr. Valencia-Mendoza's record of conviction only authorized a sentence of six months, that six-month maximum sets the maximum term of imprisonment for purposes of assessing whether he had been convicted of a crime punishable in excess of one year. All of the circuits to have considered this issue in the wake of Karachuri have considered analogous arguments to Mr. Valencia-Mendoza's and have embraced them. And I think that Brooks from the Tenth Circuit is particularly instructive. Brooks considered a statutory scheme that in all material respects is identical to Washington's. The Kansas statutory scheme, like the Washington statutory scheme, sets a statutory maximum that is double the presumptive range. The prosecutor can establish that presumptive, that aggravated maximum by proving aggravating factors. If it does not do that, then the Kansas courts are, by legislative decree, just like in Washington, bound to impose the presumptive term. In Brooks, the defendant had been facing in Kansas a presumptive range of seven months. That meant that his statutory maximum that he could have received was 14 months. The prosecutor chose not to notice aggravators, and so the court was not able to impose that. There was no recidivist finding in the record. And the Brooks court concluded, as a consequence, that the defendant in that case, in the Kansas conviction context, could not have received more than seven months and accordingly concluded that the career offender guideline, which uses operatively the exact same language as the language in Section 2L1.2, did not apply. So Brooks and the rest of the circuits, as well, who have considered the issue, both in a variety of different contexts, but the Eighth Circuit, the Fourth Circuit, and now in my 28-J letter, again in the different context, but in the Rockymore case, the Sixth Circuit, too, have all embraced this same exact analysis. And Mr. Valencia-Mendoza's argument makes sense. It respects the guidelines' purpose of tailoring sentences to specific offenders, and it also respects the text of the guidelines, which did not key to state classifications, but instead specifically said that a particular state offense qualifies as a, quote, felony only if it is punishable by a term in excess of one year. And the Supreme Court has rejected the notion that states' labeling of an offense as a misdemeanor or felony controls in various different contexts, including in Taylor and in Shepard. And I would also just note that the specific results decried in Karachuri would be realized if Mr. Valencia-Mendoza's argument was rejected here. And so that is, the Karachuri Court specifically balked at the possibility that, for example, possessing, in that case, a single tablet of unprescribed Xanax could qualify as an aggravated felony. But if the court rejects Mr. Valencia-Mendoza's argument here, then this same consequence could follow in Washington. A person could possess a single unprescribed tablet, only be susceptible to six months imprisonment, and yet receive a bump for having committed a crime punishable by more than one year in prison. So even that analysis in that particular context would be would be realized if the court chose to reject Mr. Valencia-Mendoza's argument. And then the last I would say is that part of this argument is that Crawford and Merillo have been effectively, they're irreconcilable with the Supreme Court's intervening case law. And I think that that is clear from the case law and from the subsequent circuit law as well. But I would also just note that Crawford and Merillo did not ever consider Mr. Valencia-Mendoza's precise argument. The focus of Crawford and Merillo is that, was essentially whether Apprendi or Blakely required as a constitutional matter that courts look to the offender-based actual statutory maximum as opposed to the theoretical maximum. And this court held that no, as a constitutional matter, that was not required. But Mr. Valencia-Mendoza's argument is different here. Mr. Valencia-Mendoza's argument is that as a textual matter now, the Supreme Court has weighed in and has said no, as a matter of the statutory text, one needs to look to the offender-based actual maximum as opposed to the theoretical maximum. It's not a constitutional concern. It is a textual concern. And so that is the chart that the Supreme Court has now taken, and I would urge this court to adopt that chart as well. Thank you. Thank you. You have some rebuttal time if you want to use it. You're disappearing. Sorry about that. Be right there. Perfect. Good morning. My name is Matt Duggan from the Eastern District of Washington, Spokane. The main point I wanted to make at this argument is that when we look at this issue, the issue is really whether the crime itself is punishable by more than one year, not whether a particular defendant may have been eligible for a penalty that exceeds one year. Counsel, I have a question that is wholly apart from a direct one about the meaning of the guideline. In the Fifth Circuit, the government, in a series of cases in 2014 and 2015, took the same position as the defense does here, that is, conceded this issue, the presumptive sentences in each of the cases being below a year, basically exactly what the defense is arguing here. What do we make of that? Are you bound by the government's concession and stipulations in those cases or not? And if not, why not? Your Honor, I don't think we are bound by those concessions, and I'll say that the position that I'm taking today is different than that position. Yes, I know that. That's why I'm asking you the question. Yes, and I don't, I'm not sure that that is the right decision that this circuit should take, and I understand we're talking about a different circuit. I'm not asking about what your your substantive view is. I'm asking about what effect, if any, we give to the fact that the government is taking an inconsistent position with respect to a position it took in several cases. Even, I understand it's in another circuit, but it's still the United States. So what do we do about that? Your Honor, I don't think that them conceding that issue requires this Court or us to take the same approach. Why not? One... And I'm not interested about this Court. I'm interested in your position. Certainly. For my part. One, I honestly don't think that is the right position to take, and I understand the United States has taken that position in a different circuit. But I think when we look at this case, and when we're looking at this Washington conviction, we are in a different position in this circuit than those courts were with their crimes in those states for those crimes. So what we have in Washington is a clearly defined maximum penalty of five years for this case. And a clearly statutorily required grid for sentencing, and the judgment of conviction shows that six months is the maximum that this person can be sentenced to. Why isn't that different than the old, you know, discretionary guidelines? Yes, Your Honor. And I think a comparison of two defendants who are charged with the same crime will illustrate my point for that. If you have a person, A, who has been convicted of possession of cocaine, and they receive a six-month sentence, and then you have another person who's committed the same offense, but their sentence is 24 months, we're looking at the same act or the same conduct of each of these defendants. We're not looking at the same statutory requirement for what that person can be sentenced to. There are a series of findings that are required by law before the sentence can be greater than six months, and it's clear from a judgment of conviction that none of those findings has been made. So they're not similarly situated in your example, because to follow the law in that other situation, there would have had to be additional factual findings made that would presumably also be reflected in that judgment of conviction. That's correct, Your Honor. And my point is that those other factors, while they may not be present in that statutory scheme, those factors would be present to the sentencing judge in Washington. So even though those aren't on the record, the judge would know about those, and those factors will be taken into account at sentencing. Well, apart from the inconsistent positions the government has taken, if you look at the Tenth Circuit case, for example, the court said the maximum amount of prison time a particular defendant could have received controls rather than the time of the worst recidivist. So leaving the government's inconsistent positions aside, wouldn't you also have us create a circuit split if we were to adopt your position here? I don't think so, Your Honor, and the reason I don't think so is because the Moncrief case and the Karachuri case are both distinguishable, and the in-circuit law of the Ninth Circuit supports the United States position in this case. Well, I don't think, if you look at the Brooks case out of the Tenth Circuit, and I know that you probably will try to parse the Kansas statute a little differently, but it isn't the ultimate holding there about whether you're looking at the worst possible recidivist versus the actual. Isn't that the same principle you want us to hold the opposite of? Well, it's not a matter of whether each defendant who has a different criminal history will naturally receive a different sentence. So we're not looking at the worst offender. What we're trying to look at is the crime in this case and what the conduct was, and when we look at that Brooks case that dealt with the Kansas statutes, they did not have, like Washington has, explicit maximum penalties. So that's the difference that we have here. We have statutorily mandated a maximum penalty in this case, which is five years. Your Honor, the last thing I wanted to mention is that I believe this is harmless error because the defendant in this case also had other convictions which would have given him the four-level increase, and those are a 2010 malicious mischief conviction and a 2014 assault with a deadly weapon, possession of stolen firearm conviction, in which he was sentenced to 33 months. Did the court rely on either of those? I'm sorry? Did the court rely on either of those convictions? The court did not rely on either of those convictions, but my point is that because of those convictions and their existence, he would have received a four-level increase and could have received a four-level increase for those convictions, and therefore it is harmless error. Does the court have any other questions for me? I don't believe so. All right. Thank you. Thank you, counsel. Mr. Crowe? Thank you, Your Honor. Just a couple of points to end with the last application of the four-level bump. I would say that the malicious mischief conviction, if the court consults the PSR, suffers from, you know, the exact same problem, as far as we can tell, as far as the record suggests, as the possession of cocaine conviction, and with respect to the 2014 convictions that Mr. Duggan referenced, those all post-dated Mr. Valencia Mendoza's last removal, and under the 2015 guidelines, post-dated convictions do not qualify for the bump. So if the court were inclined to examine alternative bases for affirming here, I don't think those bases exist. With respect to the circuit split issue, Brooks is indistinguishable. The other circuits' cases are indistinguishable, not only in their reasoning, but also in, for example, Brooks's case and, frankly, in the North Carolina statute's case, in how the presumptive range for any given offense in the Kansas grid will set a statutory, because it is provided by the Kansas legislature, a statutory maximum. That statutory maximum will be double whatever the presumptive range is. In Brooks, therefore, the statutory maximum was 14 months. The prosecutor could have obtained a 14-month sentence in theory, had the prosecutor noticed aggravators, just like in Washington, a prosecutor could, in theory, obtain a maximum sentence by noticing aggravators. But the Brooks court concluded that because the prosecutor had not done that, and because the grid required no more than seven months, that was the operative maximum. And the same exact analysis applies in Washington. And so I simply don't think that those statutes can functionally be distinguished in any way from the Washington context. And then with respect to whether there's the inconsistent positions that I noted in my briefing that the government has taken, I would just note there has been no change in law that would justify a distinction, you know, a different position now. The law is exactly as it was. Is there any limiting principle opposing counsel who said, well, those are other circuits, the Fifth Circuit, the Sixth Circuit, and so on. Does that matter in terms of the position of the United States? Does it matter that those concessions occurred elsewhere? No, I don't believe so. Especially not in this context where the concessions were based specifically on the same exact theory that I'm articulating. Perhaps it would be one thing if different control, if the circuits were split and there was different But in this particular context, the concessions were rooted in Moncrief and Karachuri, which are Supreme Court cases. And I think that the government, which is a unified body, is bound by those concessions. And then I would just say that to the government's example of two defendants who, you know, could potentially receive different maximum terms of imprisonment and they committed the same offense. That is well and good that that could happen. But again, I think that is just to underscore the point of Karachuri, which is that it is now an amalgam, the Supreme Court has told us, of both factors, sentencing factors, and the underlying offense that a court must look to in order to determine the operative maximum. And so I think that that example is just the way it will work under Karachuri-Rosendo and under Moncrief. Thank you. Thank you, counsel. The case just argued is submitted and we appreciate helpful, thoughtful arguments from both counsel.
judges: McKeown, Graber, Christen